IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| BRENDA M. BOWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:13-cv-00063 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| VANTIUM CAPITAL, INC., d/b/a | ) | By: Hon. Jackson L. Kiser |
| ACQURA LOAN SERVICES, | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff Brenda M. Bowman ("Plaintiff") filed a Complaint in state court alleging that Defendant Vantium Capital, Inc., doing business as Acqura Loan Services ("Vantium"), violated the Real Estate Settlement Procedures Act ("RESPA"). (See Compl. ¶¶ 10−11 [ECF No. 1 Ex. A].) Vantium removed the action to this Court and moved to dismiss the Complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Mot. to Dismiss, Nov. 4, 2013 [ECF No. 6].) Plaintiff responded, and the issues were fully briefed by the parties. I heard oral arguments on January 6, 2014, and the matter is now ripe for decision. For the reasons stated below, I will **GRANT** Vantium's Motion to Dismiss and allow Plaintiff leave to amend her Complaint.

I. **STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**[1]

Plaintiff and her husband, Harold Bowman (who is not a party to this action), reside at a home on Bagwell Drive in Scottsburg, Virginia ("the house"). (Compl. ¶ 1.) When the Bowmans purchased the house, they applied for and received a mortgage loan from Bank of

---

[1] Where available, facts are taken from Plaintiff's Complaint. At this stage, it is appropriate to accept Plaintiff's factual allegations as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Other facts are gleaned from the pleadings filed by the parties. Although the facts do not appear to be in great dispute, for the purposes of ruling on this Motion, only those facts set forth in the Complaint are deemed to be true.

- 1 -

America ("the lender"). (Compl. ¶ 4.) The mortgage loan was evidenced by a note and secured by a deed of trust. (Id.) The lender engaged Vantium to service the loan. (Compl. ¶ 6.)

On June 12, 2013, Plaintiff's counsel sent Vantium a letter that purported, on its face, to be a "Qualified Written Request Re: 12 U.S.C. § 2605(e)(1)(B)(2); 24 C.F.R. § 500.21(e)." (Compl. ¶ 7; Compl. Ex. A.) The letter was attached as an exhibit to the Complaint and was directly referenced in the Complaint, even though the content of the letter was not directly stated in the body of the Complaint. In the letter, Plaintiff implored Vantium to correct what she believed was a failure to credit properly payments made on her loan. (See Compl. Ex. E.) Her letter included copies of money orders Plaintiff alleges represented payments that she made on the loan but which were not credited to her account. In accordance with prior correspondence to Vantium in which she repeatedly raised the same issue, Plaintiff asked Vantium to investigate her claims, "correct the status of this loan," and credit payments she contends she made but which were not reflected on her account. (Id.) At the time Plaintiff sent the June 12, 2013, letter, the Bowman's home was in foreclosure. (See id.)

On June 25, 2013, Vantium responded to Plaintiff's letter. (See Compl. ¶ 9; Compl. Ex. B.) Vantium asserted in its response that it only serviced the loan between February 1, 2010, and October 11, 2012, and that all of the payments which Plaintiff claims were not properly credited fell outside those dates.[2] (Compl. Ex. B.) Additionally, Vantium claimed that "some of these receipts are difficult to read if not completely illegible while others are not relevant to mortgage payment research." (Id.) Plaintiff asserts in her Complaint that Vantium was required, pursuant to the Real Estate Settlement Procedures Act ("RESPA"), "to make appropriate corrections to the account of the Bowmans as requested . . . but failed to do so." (Compl. ¶ 10.) Despite

---

[2] Plaintiff's receipts show forty-seven (47) payments between 1996 and 2009. (See Compl. Ex. A.)

Vantium's June 25 response, Plaintiff asserts that she "has been subjected to negative credit reports regarding the loan, the note, and the deed of trust, which has reduced her credit scores, which has caused her economic harm." (Compl. ¶ 12.) She seeks compensatory damages totaling $10,000.00, and statutory damages totaling $1,000.00.

Although not set forth in the Complaint, Plaintiff's husband filed for bankruptcy on April 21, 2009. (See Def.'s Mem. in Supp. of its Mot. to Dismiss pg. 1 [ECF No. 7] [hereinafter "Def.'s Mem."].)[3] Plaintiff did not join in her husband's filing, but she was listed as a joint debtor with respect to the house. (Id. at pg. 1−2.) As a result, creditors such as the lender were prohibited from proceeding against the jointly held assets of the Bowmans pursuant to the co-debtor stay set forth in 11 U.S.C. § 1301.

In October 2009, almost four years before Plaintiff sent the letter to Vantium (see Compl. ¶ 7), the lender filed a motion with the Bankruptcy Court seeking relief from the automatic stay in order to initiate foreclosure proceedings "because the Bowmans were delinquent on payments due under [the] note secured by [the] deed of trust on the Property."[4] (Def.'s Mem. pg. 2.) The Bankruptcy Court gave Plaintiff special notice of the lender's motion, and the Order required Plaintiff to file any objections to the lender's request within twenty (20) days. (Id.) She did not file any objections. (See id.) Likewise, during her husband's bankruptcy proceedings, Plaintiff never contested the lender's contention that the Bowmans were delinquent under the note. (See

---

[3] Plaintiff does not dispute any facts set forth in Defendant's Memorandum in Support of its Motion to Dismiss. In fact, Plaintiff "adopts the statement of the facts by the excellent legal counsel for Vantium in Vantium's memorandum in support of its motion to dismiss." (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss [hereinafter "Pl.'s Mem. in Opp'n"] pg. 1 [ECF No. 9].)

[4] Although Plaintiff has adopted Vantium's statement of facts, she appears to dispute the allegation that she or her husband were actually in arrears on the house. In her letter to Vantium, she asserts that she made payments that were not credited to her account. (See Compl. Ex. A.) In her Complaint, she asserts that Vantium's failure "to make appropriate corrections to the account of the Bowmans" constituted a violation of RESPA. (See id. ¶ 10.)

id.) Mr. Bowman and the lender subsequently agreed to a Consent Order which prevented the lender from initiating foreclosure proceedings at that time. (See Def.'s Reply Br. in Supp. of its Mot. to Dismiss pg. 7 [ECF No. 11].)

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In determining facial plausibility, I must accept all factual allegations in the complaint as true. Id. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the complaint must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

## III. DISCUSSION

The Real Estate Settlement Procedures Act ("RESPA") was passed in 1974 in an effort to reform the real estate settlement process to "insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive

practices that have developed in some areas of the country." 12 U.S.C. § 2601(a) (2013). To that end, RESPA empowers borrowers to request certain information from their loan servicers regarding their loans by way of a Qualified Written Request ("QWR"):

> [A QWR is] a written correspondence, other than notice on a payment coupon or other payment medium supplied to the servicer, that—
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). RESPA also establishes the action a servicer is legally required to take when presented with a QWR:

> Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>   (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>   (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>   (i) information requested by the borrower or an explanation of why the information requested is

>>(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

Id. § 2605(e)(2). In order to state a claim for a violation of this section of RESPA, "a plaintiff must allege facts to support that: (1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3) the defendant failed to adequately respond within the statutory period . . . , and (4) the plaintiff is entitled to actual or statutory damages." Arroyo v. Bank of America, N.A., Civil Action No. 1:13-cv-01767, 2013 WL 3785623, at *3 (N.D. Ga. July 18, 2013) (internal quotation omitted).

It is uncontested that Vantium is a loan servicer, so the first prong of Plaintiff's prima facie case is established.[5] A review of the Complaint and attached documentation (which include the June 12, 2013, letter and Vantium's response) reveals that Plaintiff did comply with the requirements for a QWR. In her letter, Plaintiff identifies herself and her account, and she indicates that not all payments have been properly credited. She included copies of payment stubs representing 47 payments to various loan servicers who (presumably) serviced her loan over the years.

Vantium asserts that the letter is not a QWR because it concerns accounting errors that took place before it began servicing the account. In support of this contention, it cites several cases. Those cases, however, stand for the proposition that a letter seeking information about the process by which a loan was approved or procured is not a QWR; they do not say that a QWR must only relate to the current loan servicer's accounting of the loan. See Medrano v. Flagstar

---

[5] As Vantium's counsel pointed out during oral argument on its motion, the fact that the letter was received after Vantium ended its time as loan servicer is not relevant in this action. As long as Vantium received the letter within one year after it ceased servicing the loan, the letter could qualify as a QWR to which Vantium was obligated to respond. See 24 C.F.R. § 3500.21(e)(2)(ii) (2013).

Bank, FSB, 704 F.3d 661, 666-67 (9th Cir. 2012) (noting that "[s]ervicing, so defined, does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement. Such events *precede* the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors."); Minson v. CitiMortgage, Inc., Case No. 12-cv-223, 2013 WL 2383658, at *5 (D. Md. May 29, 2013) (holding that a communication did not constitute a QWR because, although it claimed to be a QWR and specifically cited RESPA, it sought copies of loan documents, verification of the identity of the holder in due course of the loan, and proof of the servicer's authority to service the loan; the letter did not relate to servicing, as that term is defined in RESPA, because it "says nothing about the defendant['s] receipt of scheduled periodic payments or the amounts of such payments." (internal citations omitted)); Luther v. Wells Fargo Bank, Case No. 4:11-cv-00057, 2012 WL 4405318, at *7 (W.D. Va. Aug. 6, 2012) (holding that communications from the borrower "challenge the validity of the loan and do not seek a communication relating to the servicing of the loan . . . ."); Hintz v. JP Morgan Chase Bank, N.A., Civil No. 10-2825, 2011 WL 579339, at *8 (D. Minn. Feb. 8, 2011) (granting 12(b)(6) motion where letter purporting to be a QWR only "complained of irregularities in [Washington Mutual's] and Chase's lending practices and requested that Chase provide an explanation of its lending practices in connection with the Mortgage." (internal quotation omitted)); Bray v. Bank of Am., Case No. 1:09-cv-075, 2011 WL 30307, at *12 (D.N.D. Jan. 5, 2011) (dismissing RESPA claim because "[t]he ongoing communications sent to the Defendants challenge the validity of the loan and accuse the Defendants of various statutory violations, but none of the communications relate to the servicing of the loan as that term is defined by statute.") Therefore, the fact that Vantium was not the loan servicer at the time the payments were

allegedly not counted does not seem to be a bar to liability under RESPA. Cf. 12 U.S.C. § 2605(i)(3) (2013) (defining "servicing" as "receiving *any* scheduled periodic payments from a borrower . . . ," not merely those periodic payments addressed to the loan servicer) (emphasis added). Rather, as here, an appropriate response would be for a loan servicer to reply in accordance with RESPA and state the reasons that it is unable to verify past payments or amend account balances based on assertions of fact that it cannot verify by reference to its own records.

The closer question, however, is whether "the defendant failed to adequately respond" to Plaintiff's QWR. In the Complaint, Plaintiff asserts that "Vantium was required to make appropriate corrections to the account of the Bowmans as requested . . . but failed to do so." (Compl. ¶ 10.) Under 12 U.S.C. § 2605(e)(2)(A), correcting the account was one of Vantium's options for responding. If Vantium failed to do so, that failure could amount to a violation of RESPA. The statute, however, lists three permissible responses. Therefore, even if everything Plaintiff asserts is true, it is possible that Vantium still complied with RESPA by responding in one of the other appropriate manners.

When Vantium's response to Plaintiff's June 12, 2013, letter is reviewed, it is clear that it was a proper and permissible response under RESPA. Although a review of the response may lead me to disagree with Plaintiff's characterization of Vantium's responses (namely that they were insufficient under RESPA), Rule 12(b)(6) "does not countenance . . . dismissals based upon a judge's disbelief of a complaint's factual allegations." Meitzke v. Williams, 490 U.S. 319, 327 (1989). Nevertheless, if a defense is evident on the face of the Complaint, or if the defense relies on documents that are attached to the complaint and which are "integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity," then I may consider it under Rule 12(b)(6). Burkhead v. Wachovia Home Mortg., Civil Action No. 3:12-cv-00832,

2013 WL 2156472, at *2 (E.D. Va. May 17, 2013) (quoting Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004)). "In short, courts do not generally assess the merits of affirmative defenses at the 12(b)(6) stage, but when a defendant presents exhibits that clearly demonstrate a defense's validity, the plaintiff herself has made those exhibits central to the dispute, and the exhibits are evidently authentic, courts may rely on those documents in granting a motion to dismiss." Id.; see also Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) ("[A]n affirmative defense may be raised on a 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint.").

Here, Vantium's response stated clearly that it did not service the loan during the time period in question. (See Compl. Ex. B.) It further stated that some of the payment coupons were illegible, and that some were not relevant to Plaintiff's mortgage. (See id.) It also advised that the Bowmans were represented by counsel in Mr. Bowman's bankruptcy proceeding and provided Plaintiff's counsel with that attorney's contact information, as well as a copy of three previous letters in which the same information had been relayed along with contact information for a Vantium service representative. (See id.)

RESPA specifically permits a loan servicer to respond to a QWR after conducting an investigation by providing "the borrower with a written explanation or clarification that includes (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605(e)(2)(C). Vantium responded in that manner. It reviewed the receipts, as evidenced by its reference to the dates of the payments and the legibility of the receipts, informed Plaintiff that it did not service the loan at that time and was not in possession

of records regarding those payments, and informed her who to contact for more information. Although Plaintiff may want a greater investigation and a different outcome, it appears, from the face of the Complaint and the attached exhibits, that Vantium met the minimum response requirements under RESPA.

Vantium's contention that Plaintiff's claims should be barred by judicial estoppel is without merit. "Judicial estoppel is a principle developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court." Zinkand v. Brown, 478 F.3d 634, 638 (4th Cir. 2007). It is "an equitable doctrine that exists to prevent litigants from playing 'fast and loose' with the courts—to deter improper manipulation of the judiciary." Folio v. City of Clarksburg, 134 F.3d 1211, 1217 (4th Cir. 1998) (quoting John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28−29 (4th Cir. 1995)).

> The Fourth Circuit applies a four-prong test to determine if judicial estoppel should be applied in a particular case. It applies where: '(1) the party to be estopped [is] advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position [is] one of fact instead of law; (3) the prior position [was] accepted by the court in the first proceeding; and (4) the party to be estopped [has] acted intentionally, not inadvertently.'

Vanderheyden v. Peninsula Airport Comm'n, Case No. 4:12-cv-46, 2012 WL 6760107, at *3−4 (E.D. Va. Sept. 27, 2012) (quoting Folio, 134 F.3d at 1217−18).

In the present case, although Plaintiff had the opportunity to take a position during her husband's bankruptcy proceeding, she never did. She was not a party to the proceeding and was only given special notice because she was a co-debtor with regards to the house. She did not respond in any fashion to the court's notice, and therefore never affirmatively took a position on the status of the loan. The case initially cited by Defendant is inapposite because, in that case, the Bankruptcy Court specifically included in its Order that the party was to respond to its Order

by a certain date or be "forever barred" from asserting a contrary position. See In re Urban Broadcasting Corp., 304 B.R. 263, 270-71 (E.D. Va. Br. 2004), aff'd, 401 F.3d 236, 245 (4th Cir. 2005). No such language was included in the relevant order served on Plaintiff. (See Def.'s Mem. Ex. C, D.)

Moreover, whether her inaction was intended as tacit acceptance that the loan was due and owing is an inherently fact-specific inquiry that is inappropriate for decision at this early stage of litigation. Accord In re Kane, 628 F.3d 631, 639 (3d Cir. 2010) ("[T]he applicability *vel non* of judicial estoppel is fact-specific."). Likewise, it is possible that Plaintiff failed to take a position because an agreement had been reached which prevented foreclosure. (See Def.'s Reply pg. 7, Ex. A.) In either event, passing judgment on the claim of judicial estoppel at this early stage and with such a limited record would be premature.

In her filings in opposition to the Motion, Plaintiff seeks leave to amend her Complaint in the event that I determine her Complaint is lacking. Defendant opposes this request, arguing that any such amendment would be futile. While the facts discussed above will not change, the dealings of the parties are not limited to the two letters which comprised the issues under review at this stage. Plaintiff will therefore be granted leave to amend her Complaint within fourteen (14) days from the date of this Opinion

## IV.   CONCLUSION

Plaintiff's letter to Vantium was a valid qualified written request. The fact that Vantium was not the servicer at the time of the payment discrepancies does not mean the letter did not concern the servicing of Plaintiff's loan. Nevertheless, Vantium's response was a proper response under RESPA. As such, Plaintiff has failed to state a claim against Vantium based on

the June 12, 2013, letter and Vantium's subsequent response. Nevertheless, Plaintiff is granted fourteen days to file an amended Complaint, if she chooses to do so.

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 13th day of January, 2014.

s/Jackson L. Kiser<br>
SENIOR UNITED STATES DISTRICT JUDGE